UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LARRY JACKSON,

                Plaintiff,                Case No. 1:17-cv-198

v.                                   Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's federal action will be dismissed on grounds of immunity and failure to state a claim.

**<u>Factual Allegations</u>**

Plaintiff Larry Jackson presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility, though the actions about which he complains occurred while he was housed at the Bellamy Creek Correctional Facility (IBC). He sues the MDOC, MDOC Director Heidi E. Washington, and the following IBC Correctional Officers: (unknown) Jordan, (unknown) Lebo, and (unknown) Harrison.

Although Plaintiff's complaint consists largely of legal conclusions and citations, Plaintiff attaches a list of facts at the end of his complaint. (Compl., ECF No. 1, PageID.14.) According to that list of facts, on June 28, 2016, at 6:10 p.m., Defendant Jordan entered Plaintiff's cell and found four 20-ounce pop bottles filled with homemade alcohol, which were inside a trash can. Five minutes later, Plaintiff's cellmate, inmate Stanley, confessed to Jordan that the alcohol was his, not Plaintiff's. Nevertheless, Defendant Jordan issued a misconduct ticket against Plaintiff for substance abuse, a major misconduct. MICH. DEP'T OF CORR., Policy Directive 03.03.105, Attach. A. At about 7:40 p.m., Stanley allegedly told Defendant Harrison that he was responsible for the alcohol, but Harrison nevertheless reviewed Plaintiff on the misconduct a few minutes later, and he did not dismiss the charge. Defendants Jordan and Harrison notified Defendant Lebo of Plaintiff's status at 7:45 p.m. Five minutes later, Stanley told Defendant Lebo that the alcohol belonged to him, not to Plaintiff.

On July 6, 2016, Hearing Officer Susan Burke found Plaintiff not guilty of the misconduct charge. Plaintiff alleges that he sent Defendant Washington "an acknowledg[]ment letter regarding this officials [sic] corrupt behavior."

Plaintiff alleges numerous violations of state policy, state law, federal criminal law, and civil constitutional provisions. He alleges that Defendant Washington violated her duties under MICH. COMP. LAWS § 791.203 and her oath of office in failing to supervise her employees. He also alleges that her failure to take action violated Plaintiff's rights under the Eighth and Fourteenth Amendments, 18 U.S.C. §§ 241-242 (conspiracy), 18 U.S.C. § 1506 (obstruction of justice by alteration of record), and MICH. COMP. LAWS § 750.505 (punishment for common-law offenses). Plaintiff alleges that Defendant Jordan violated the code of ethics under MICH. DEP'T OF CORR., Policy Directive 02.03.107, as well as federal criminal law (18 U.S.C. § 1519 (alteration/falsification of records in federal investigations)), state criminal law (MICH. COMP. LAWS § 750.249 (uttering and publishing)), federal constitutional tort law under 42 U.S.C. §§ 1981 and 1983, the state tort of defamation of character, and prison policy. He alleges that Defendants Lebo and Harrison conspired in all of the actions taken by Defendant Jordan and are likewise responsible for the same violations.

For relief, Plaintiff seeks monetary damages in the amount of $400,000.00, together with the imposition of a lien on all of Defendants' assets and finances.

### Discussion

I.      Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh

Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    Eighth Amendment

Plaintiff suggests that Jordan violated his Eighth Amendment rights by falsely accusing him of misconduct, for which he could have possibly suffered the following consequences: loss or continuation of his parole; loss of his visitation rights; placement in segregation; increase in security level; and loss of his institutional job.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

None of the alleged risks faced by Plaintiff over the allegedly false misconduct charge rises to the level of an Eighth Amendment violation. For example, courts routinely have held that placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (2008). Finally, the ticket was ultimately dismissed after hearing in any event. As a result, Plaintiff fails to state an Eighth Amendment claim against any Defendant.

B. Fourteenth Amendment

Plaintiff appears to allege that he was denied his rights under the Fourteenth Amendment when Defendant Jordan wrongly filed a misconduct ticket against him. Arguably, Plaintiff intends to raise both procedural and substantive due process claims.

1.     Procedural due process

Plaintiff claims that the major misconduct charges against him were "false" and violated his right to procedural due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). This case does not fit neatly into the procedural due process framework because Plaintiff ultimately used the process and prevailed – the ticket was dismissed. The Court will nevertheless analyze the claim focusing only on the original issuance of the ticket, and the decision not to dismiss it on initial review.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and

it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct tickets resulted in any loss of good-time credits. Nor could he have done so even if he had ultimately lost after hearing. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff would have had no due-process claim based on the loss of

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

disciplinary credits, even if he had lost. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008). Here, he ultimately won, and so he obviously did not and could not lose any disciplinary credits.

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Here, Plaintiff was found not guilty of the misconduct. He therefore suffered no atypical or significant hardship.

### 2. Substantive due process

Plaintiff also appears to allege that, by filing a false misconduct, Jordan violated his right to substantive due process under the Fourteenth Amendment. He alleges that the other Defendants also violated substantive due process by failing to dismiss the false misconduct charge.

"Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental

power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

Plaintiff's allegations against Jordan for filing a false misconduct charge and against the other Defendants for upholding that charge do not amount to conduct that either shocks the conscience or an egregious abuse of governmental power. Unlike those cases in which a defendant has fabricated evidence, Plaintiff here alleges only that Defendant Jordan issued the misconduct ticket against the wrong person. Notwithstanding Plaintiff's overblown language, the fact that an officer charged the wrong prisoner in a cell containing multiple inmates is not shocking or egregious conduct. Moreover, Jordan did not act outrageously when he did not credit claims that the other prisoner was responsible for the alcohol. Instead, Defendant Jordan was simply wrong or negligent in issuing the charge – neither of which rise to the level of a substantive due process violation. Because Defendant Jordan did not violate substantive due process in charging the wrong inmate with the disciplinary offense, Defendant Harrison could not have violated substantive due process by upholding the charge at initial review. For the same reasons, Defendants Lebo and Washington did not violate substantive due process by failing to act on Plaintiff's complaints.

C.    Conspiracy

Plaintiff contends that Defendants Washington, Jordan, Lebo, and Harrison conspired, in violation of 42 U.S.C. § 1983 and 1985, to deprive him of his constitutional rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v.*

*Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Similarly, to state a claim for conspiracy under § 1985, a plaintiff must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Under both § 1983 and § 1985, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).

   Plaintiff utterly fails to allege facts suggesting that Defendants shared a conspiratorial objective. He simply concludes that they all conspired because Washington, Lebo and Harrison did not immediately strike the misconduct charge in response to Plaintiff's claims that he was not the

person who possessed the alcohol. Such a conclusory allegation falls short of demonstrating conspiracy. *Twombly*, 550 U.S. at 565; *Fieger*, 524 F.3d at 776; *Spadafore*, 330 F.3d at 854.

Further, as earlier discussed, Defendant Jordan did not violate Plaintiff's constitutional rights. As a result, Plaintiff cannot demonstrate that Defendants conspired to violate any constitutional right. Finally, Plaintiff utterly fails to allege, much less assert facts demonstrating, that Defendants acted with racial animus, as required to state a claim under § 1985. Indeed, Plaintiff does not even mention race in his complaint.

For all these reasons, Plaintiff fails to state a claim for conspiracy to violate his constitutional rights.

D.      Supervisory liability

Other than his sweeping claims of conspiracy, Plaintiff's only allegations against Defendant Washington are that she failed to supervise her subordinates and failed to take action after Plaintiff complained to her about the actions of others. Plaintiff's only factual allegation against Defendant Ledo is that he failed to take unspecified action after being informed by Plaintiff and his cell mate that Defendant Jordan's misconduct ticket was not accurate.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310

F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act based

upon information contained in a grievance or complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

has failed to allege that Defendants Washington and Lebo engaged in any active unconstitutional

behavior. Accordingly, he fails to state a claim against them.

### E. Federal and state criminal claims

Plaintiff alleges that Defendants violated various federal and state criminal statutes.

Specifically, he claims that Defendants violated 18 U.S.C. §§ 241-242 (conspiracy), 18 U.S.C.

§ 1506 (obstruction of justice by alteration of record), (18 U.S.C. § 1519 (alteration/falsification of

records in federal investigations), MICH. COMP. LAWS § 750.249 (uttering and publishing), and

MICH. COMP. LAWS § 750.505 (punishment for common-law offenses).

A civil rights action is not a proper vehicle for attempting to bring criminal charges.

*See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizen lacks standing to initiate

criminal proceedings); *see also Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692-93

(6th Cir. 1994) (private party lacks standing to compel the state to pursue criminal or civil actions).

The Court therefore will dismiss Plaintiff's federal and state criminal claims.

### F. State law

Plaintiff alleges that Defendants violated MICH. COMP. LAWS § 791.203, the state tort

of defamation of character, their oaths of office, and prison policy. Claims under § 1983 can only

be brought for "deprivation of rights secured by the constitution and laws of the United States."

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Plaintiff's allegations that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), on grounds of immunity and failure to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    April 28, 2017            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE